# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 25, 2014      Decided April 21, 2015

No. 13-7104

MELISSA STANDLEY,
APPELLANT

v.

KAREN EDMONDS-LEACH, OFFICER, DISTRICT OF COLUMBIA
LIBRARY POLICE DEPARTMENT AND DISTRICT OF COLUMBIA,
A MUNICIPAL CORPORATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01770)

*Anitha W. Johnson* argued the cause and filed the briefs for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: ROGERS, KAVANAUGH and PILLARD, *Circuit Judges*.

Rogers, *Circuit Judge*: Melissa Standley appeals the judgment on her tort claims for D.C. Public Library Special Police Officer Karen Edmonds-Leach and the District of Columbia on the ground that the district court abused its discretion in allowing the defendants to call a witness they failed to identify prior to trial in accordance with Federal Rule of Civil Procedure 26(a). Standley maintains, as she argued in the district court, that the witness's testimony was not offered "solely for impeachment," as the rule's exception requires, and that the error was prejudicial. We agree that the district court erred as a matter of law in misstating the exception under Rule 26(a). Because the witness's testimony was not confined to impeachment and because the outcome of the trial turned on the jury's assessment of the credibility of Standley and Officer Edmonds-Leach, we further agree that the testimony of the relatively disinterested witness likely influenced the outcome of the trial. Accordingly, this court cannot say with fair assurance that the district court's error did not affect Standley's substantial rights, and we must reverse and remand the case for a new trial.

**I.**

On February 3, 2011, Standley went to a D.C. public library to complete her homework and study for upcoming college exams. She sat in an area of the library reserved for children, even though she was too old to sit in that section. Officer Edmonds-Leach (hereinafter "Officer Leach") asked Standley to move. Standley then relocated to the young-adult area, even though she was too old to sit there, too. After the officer again asked Standley to move, an altercation ensued, and the officer arrested Standley. Standley sued Officer Leach and the District of Columbia for the unconstitutional use of excessive force and

common law torts. At trial, Standley and Officer Leach disputed the specifics of their encounter at the library. Other than an inconclusive video, which both Standley and the officer argued supported their version of the incident, the only other evidence about the events at the library was provided by Wendell Kellar, a librarian, whose testimony is at issue in this appeal.

**A.**

At trial, Standley testified that around 5 p.m. she went to a library near her home to study, as she did three to four times a week; she was a nursing student at the University of the District of Columbia. The children's area of the library is restricted to children under thirteen years of age and adults accompanying them, and the section for young adults is reserved for those aged thirteen to nineteen. Although Standley was twenty-one years old, the adult section was full, so Standley put her things on a table in the children's section, where she had sat previously when the library was crowded. Officer Leach asked Standley to leave the area for children. Standley moved, first walking through the adult section to see if there were any available seats and then, because there were not, as she claimed could be seen in the video, to the young-adult area. She explained that although some adult seats were not presently occupied, other library patrons had left the seats temporarily to get books or to socialize, so those seats were not available for use.

Ten or fifteen minutes later, after Standley had opened her computer and "start[ed] [her] activities," Officer Leach asked Standley to leave the area for young adults. Standley asked the officer to make an exception because the adult section was full. Officer Leach said that she did not care, Standley could not sit in the young-adult area. Standley told the officer that this was "real petty" because there were no seats available in the adult section. The officer laughed and said she knew it was. Standley

also questioned how she could be asked to leave without first verifying her age; when Officer Leach requested identification, Standley said she had none with her. Standley stood up and walked towards the adult section. As she did so, she mumbled under her breath the word "bitch" once but did not use any other profane language. Officer Leach "charge[d] after" her, got "in [her] face" and asked "what did you say, what did you say," trying to provoke a confrontation.

The officer then told Standley to leave the library and pointed towards the exit. Standley put down her belongings in the adult section, intending to pack and leave as instructed. She asked the officer, who was standing so close that she was touching Standley, to give her "a little space to pack up [her] belongings." The officer replied, "I'm not going no mother[-]fuckin' where, make me move, make me move." "Before I knew it," Standley said, "[Officer Leach] hit me in the face, . . . wrapping her arm around my neck and hitting me repeatedly and then throwing me into the bookshelves." According to Standley, the video showed the officer putting her in a headlock and throwing her into a bookshelf. Standley claimed the officer threw her down on the ground and put her knee in her back. Also, whenever Standley tried to lift her head to prevent her mouth from touching the ground, because she had asthma and "couldn't breathe," the officer slammed Standley's head onto the floor. The officer told her to "shut the F up," and said she was resisting arrest. The officer handcuffed Standley, and she was transported to the police station and charged with unlawful entry and disorderly conduct. At some point, Standley was also charged with assault on a police officer.

Officer Leach's trial testimony depicted the events leading to Standley's arrest quite differently. According to the officer, she saw Standley sitting in the children's area and asked her to move to the adult section, in which there were seats fewer than

five minutes earlier. When Standley objected to moving because there were no other seats, the officer explained the library's policy regarding the age-restricted sections and again asked Standley to move. Standley left the children's area. Later, Officer Leach noticed Standley sitting in the section for teenagers and returned to tell Standley to move to the adult section. Standley asserted that she had sat in the area for young adults before and kept saying there were no other seats. The officer responded that she could see seats in the adult section. Standley continued to object and also asked, "how do you even know what my age is?" After Standley told the officer she was only nineteen, Officer Leach requested her identification. At that point, Officer Leach testified, Standley "went into a frenzy," "started cursing," and said "I didn't know you need to bring no fuckin' ID to the fuckin' library." Standley continued to spout profanities, and told Officer Leach she was "just being a fuckin' bitch."

Officer Leach told Standley to leave the library. Standley sat there and repeated that the officer was "just a bitch." Standley began to pack her things, and then with her laptop in hand walked towards the adult section. Officer Leach followed Standley, calling out "ma'am, ma'am" to get Standley's attention. Standley ignored the officer, except to say again "[y]ou're just being a bitch." Standley put her belongings down on a table, as if she were going to sit down. Officer Leach said, "ma'am, this is the last and final time that I'm going to tell you to leave," and pointed towards the exit. The officer "stood almost to the side of her," and Standley stated loudly, "bitch, get the fuck away from me. Bitch, get out of my face." Other library patrons turned around to see what was happening.

Because Standley refused to leave, Officer Leach proceeded to arrest her for unlawful entry. The officer grabbed Standley's arm, but Standley "snatche[d] away." She tried to grab

Standley's arm again, but Standley once more pulled back. They continued to struggle for "maybe 5 to 10 minutes," eventually "end[ing] up in[] the stacks where the books are," and at some point they fell to the floor. Library patrons gathered around Standley and the officer, as the video showed. While Standley was on the floor, Officer Leach restrained her, pressing her hand, not her knee, on Standley's back. The officer denied that she punched Standley in the face, placed her in a headlock, slammed her head against the floor, or used any profanity during the incident.

**B.**

All of the criminal charges against Standley were dropped before trial. Standley filed this suit, alleging excessive force in violation of the Fourth Amendment and common law claims for false arrest, false imprisonment, assault, and battery against Officer Leach and the District of Columbia (collectively "the defendants"). (Standley also filed a malicious prosecution claim that was dismissed at the close of all the evidence and has not been pursued on appeal.)

Prior to trial, Standley filed a motion *in limine* to preclude the defendants, pursuant to Federal Rules of Civil Procedure 26(a) and 37(c), from calling non-party witnesses, including librarian Wendell Kellar, because the defendants did not disclose any witnesses during discovery. The defendants agreed not to call Kellar, among others, as witnesses, and the district court denied Standley's motion as moot. The defendants, however, subsequently moved to reinstate Kellar as a witness, arguing that Kellar's testimony would "corroborate Officer Edmonds-Leach's testimony that [Standley] was disorderly while at the library," and was therefore "crucial to the defense." Standley opposed the motion, emphasizing the defendants knew about Kellar and his knowledge of the incident but failed to identify him as a potential witness pretrial. The district court

denied the defendants' motion to reinstate Kellar as a witness during their case-in-chief.  But the district court reserved ruling on whether Kellar could testify for impeachment purposes, stating that "the rules are very lax on impeachment witnesses and whether notice must be given for impeachment witnesses." Trial Tr. 9 (May 28, 2013) (morning session).

After Standley testified at trial, the defendants asked to call Kellar as an impeachment witness.  They argued that Kellar would impeach Standley's testimony that during the incident at the library (1) she did not use profanity, except for muttering an expletive once, and (2) there were no seats available in the adult section.  Standley objected, countering that "it would be prejudicial and against [] the basic rules to allow defendants to suddenly use someone for impeachment that was clearly discoverable" before trial.  The district court reserved ruling until after the officer testified.

Following Officer Leach's testimony, the defendants renewed their request to call Kellar for the purpose of impeachment.  Standley objected, explaining that Kellar's testimony would not be proper impeachment evidence because it would be used to corroborate Officer Leach's version of events, with Kellar "only testifying to a different version than [Standley]."  Standley argued that admission of Kellar's testimony would violate the discovery rules and would be unduly prejudicial to her, noting, for example, that she "would have prepared her case differently" had she known he would be called as a witness.

The district court allowed Kellar to testify as an impeachment witness.  The court found that he was "an impeaching witness and not called solely for corroboration." Trial Tr. 68 (May 29, 2013) (afternoon session).  The court explained that, "at least as his testimony is represented" by the

defendants, Kellar "will be testifying on at least two areas that [Officer Leach] has not testified to." *Id.* In particular, Kellar would testify about the number of seats that were available in the adult area, a subject on which the officer had not "claimed to . . . give any definitive testimony," and "as a person who was seated or standing . . . some distance away, he would be . . . in the best position to testify as to the volume of the remarks that [Standley] was making." *Id*. The district court, therefore, found that Kellar's testimony was "more than corroboration; that in fact, he has independent impeaching evidence to offer." *Id.* at 69. Standley reiterated her objection that the Federal Rules of Civil Procedure require an undisclosed witness to be offered solely for impeachment, and here the testimony was offered by the defendants not only to impeach Standley but also to corroborate Officer Leach. The district court again rejected that argument, stating that this is "a classic case of impeachment": "[Standley] said one thing, and [Kellar] is going to say something else. Whether impeachment and rebuttal crisscross is a matter of semantics." Trial Tr. 6 (May 30, 2013) (morning session).

At trial, Kellar testified about the two areas of impeachment approved by the district court. First, Kellar testified that during the incident at the library he heard yelling and cursing from someone other than Officer Leach, with whose voice he was familiar. That part of his testimony contradicted, and thus tended to impeach, Standley's testimony that she did not raise her voice and that it was Officer Leach who swore at her. Second, Kellar testified that at the time of the incident the library was not particularly crowded, and there was adequate seating available in the adult section, thereby tending to impeach Standley's testimony that she needed to sit in the young-adult section. But Kellar also testified on another matter. Specifically, he testified that he heard Officer Leach instruct Standley to leave the library. That was not impeachment, as

Standley had testified to the same effect.

The jury returned a verdict in the defendants' favor, and the district court entered judgment for the defendants. Standley appeals. Our review of the district court's decision to admit Kellar's testimony is for abuse of discretion. *See United States v. Garner*, 396 F.3d 438, 440 (D.C. Cir. 2005).

## II.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires that a party "without awaiting a discovery request" make an initial disclosure to the opposing party that includes "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." "In addition to the disclosures required by Rule 26(a)(1)," a party must provide "the name and, if not previously provided, the address and telephone number of each witness" that "it may present at trial other than solely for impeachment." Fed. R. Civ. P. 26(a)(3)(A)(i). Pursuant to Rule 37(c)(1), if a party fails to identify a witness as required by Rule 26(a), the party cannot use that witness to supply evidence at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). In other words, a party need not disclose a witness pursuant to Rule 26(a) if the evidence will be used "solely for impeachment," and the witness may testify at trial even if not disclosed beforehand. Fed. R. Civ. P. 26(a)(1)(A)(i), 26(a)(3)(A)(i), 37(c)(1); Advisory Committee Notes on 1993 Amendments to subdivision (a) of Rule 26, subdivision (c) of Rule 37.

## A.

The defendants concede that they did not identify Kellar as a witness in their pretrial disclosures or discovery responses, and they do not maintain on appeal that their failure to identify Kellar before trial was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Kellar's testimony, therefore, was admissible at trial only if it is subject to Rule 26(a)'s "solely for impeachment" exception. *See* Advisory Committee Note on 1993 Amendments to subdivision (c) of Rule 37; *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005).[1]

By contrast to substantive evidence, "which is offered to establish the truth of a matter to be determined by the trier of fact," impeachment evidence is "offered to discredit a witness to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her . . . testimony." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (internal quotation omitted), *cert.*

---

[1] Standley has not argued on appeal that Kellar's testimony was inadmissible because the defendants failed to identify him in response to her properly served discovery requests. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." By contrast to Rule 26(a), Rule 26(b) does not on its face protect from disclosure evidence that will be used for impeachment at trial. *See Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001); *Elion v. Jackson*, 544 F. Supp. 2d 1, 6-7 (D.D.C. 2008); *see also* 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 2015 (3d ed. 2014) (Although "[t]he initial disclosure requirements exclude items that the disclosing party may use 'solely for impeachment,' . . . no such categorical limitation applies to material sought through discovery . . . . The fact that the party responding to discovery intends to use the material only for impeachment does not take it out of the realm of discoverable material if it is otherwise relevant." (footnote omitted)).

11

*denied*, 511 U.S. 1029 (1994); *see Friedman v. Rehal*, 618 F.3d 142, 153-54 (2d Cir. 2010) (citing *Chiasson*, 988 F.2d at 517). Impeachment evidence used "[t]o attack the credibility of witnesses by the presentation of evidence showing that facts asserted or relied upon in their testimony are false . . . impeach[es] by contradiction." *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008). Impeachment by contradiction is an established way to impeach a witness's credibility. *See, e.g.*, *United States v. Miller*, 738 F.3d 361, 376-77 (D.C. Cir. 2013); *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006) (citing WEINSTEIN'S FEDERAL EVIDENCE §§ 607.06[1], 608.20[3][a] (2d ed. 2005)). Kellar impeached Standley by contradicting her about whether she yelled and cursed and the availability of seats for adults at the library, so that testimony was permissible impeachment evidence.

But "separate and apart from whether [Kellar] contradicted [Standley's] testimony," Kellar's testimony also "tended 'to establish the truth of a matter to be determined by the trier of fact.'" *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998) (quoting *Chiasson*, 988 F.2d at 517); *see also United States v. Sanchez-Robles*, 927 F.2d 1070, 1078 (9th Cir. 1991), *disapproved of on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007). In particular, if credited by the jury, Kellar's testimony about Standley's behavior tended to show Officer Leach had probable cause to arrest Standley for disorderly conduct. The defendants themselves highlighted this when they first moved to reinstate Kellar as a witness, arguing that his "testimony w[ould] corroborate Officer Edmonds-Leach's testimony that [Standley] was disorderly while at the library" and was thus "crucial to the defense." Also, Kellar testified that Officer Leach ordered Standley to leave the library. Standley disputed only when, not whether, she was told to leave, so Kellar's testimony on this point served little or no impeachment-by-contradiction purpose. *Cf. Sterkel v. Fruehauf*

*Corp.*, 975 F.2d 528, 532 (8th Cir. 1992); *Martin v. United States*, 127 F.2d 865, 866 (D.C. Cir. 1942).

In applying Rule 26(a)'s impeachment exception, some courts have concluded that the impeachment exception is limited to evidence that has no potential utility other than impeachment. For example, in *Chiasson*, 988 F.2d at 517-18, an oft-cited authority, the Fifth Circuit held that a video surveillance tape served in part a substantive function so "regardless of its impeachment value," it should have been disclosed prior to trial. The First Circuit in *Klonoski*, 156 F.3d at 270 (citing *Chiasson*, 988 F.2d at 517-18), and other courts, have taken the same approach. *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001); *Brooks v. Kerry*, 37 F. Supp. 3d 187, 204-05 (D.D.C. 2014); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 434-36 (D. Md. 2006). Likewise, in *Wilson v. AM General Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999), the Seventh Circuit concluded that because the testimony of witnesses offered to impeach was a part of the defendant's "primary line of defense," the witnesses should have been disclosed prior to trial and their testimony was properly excluded. On the other hand, the Seventh Circuit has also held that undisclosed evidence with both impeachment and substantive qualities may be presented at trial so long as it is strictly used to impeach. *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 686 (7th Cir. 1995); *see Hammel*, 407 F.3d at 870 n.13 (in light of forfeiture, declining to address whether testimony was used for both impeachment and substantive purposes, "a scenario which may not be covered by the [solely for impeachment] exception" (citing *Wilson*, 167 F.3d at 1122; *Klonoski*, 156 F.3d at 270; *DeBiasio*, 52 F.3d at 686)). Specifically, that court held that it was error to exclude evidence the defendant offered not to prove its defense, but rather to impeach the plaintiff's expert witness. *DeBiasio*, 52 F.3d at 686. Under either approach, the courts have focused on the

word "solely" and our sister circuits have read that term strictly. *See* 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 2053 n.57 (3d ed. 2014) (collecting cases).

The district court in *Hayes v. Cha*, 338 F. Supp. 2d 470, 503-04 (D.N.J. 2004), summarized the competing considerations. On the one hand, the district court acknowledged that some circuits, such as the Seventh Circuit in *DeBiasio*, 52 F.3d at 686, reject the proposition that "solely" means that the evidence can have no substantive non-impeachment value. *Hayes*, 338 F. Supp. 2d at 503. Those courts reason that evidence used to attack a witness's credibility often contains some substantive element, and reading Rule 26(a)'s "solely for impeachment" exception to bar use of such evidence if not earlier disclosed could "result in an erosion of evidence capable of warranting the impeachment designation." *Id.* (quotation omitted). On the other hand, the district court recognized that such an approach "strikes at the heart of the amended rules' broad intent" in favor of disclosure. *Id.* "Automatic disclosure was adopted to end two evils that had threatened civil litigation: expensive and time-consuming pretrial discovery techniques and trial-by-ambush." *Id.* (citing Advisory Committee Note on 1993 Amendments to subdivision (a) of Rule 26). A too expansive reading of the impeachment exception "could cause a resurgence of these evils." *Id.*

"Because a district court by definition abuses its discretion when it makes an error of law, the abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007) (internal quotations omitted). Here, the district court rejected Standley's objection to Kellar's testimony as "a matter of semantics." Trial Tr. 6 (May 30, 2013) (morning session). The court ruled that Kellar could testify because he

was "an impeaching witness and not called solely for corroboration." Trial Tr. 68 (May 29, 2013) (afternoon session). Under Rule 26(a), however, the question is whether the testimony will be used "solely for impeachment," not whether it will be used solely for corroboration. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), 26(a)(3)(A)(i). By shifting the critical word "solely" to modify "corroboration" rather than "impeachment," the district court applied the wrong test in deciding whether to admit Kellar's testimony and thus abused its discretion. *See Koch*, 489 F.3d at 388.

By so proceeding, the district court never addressed the considerations that courts have found relevant under the several interpretations of the scope and nature of Rule 26(a)'s impeachment exception, and the opportunity to explore the contours of that exception was lost. Would the district court have ruled Kellar's testimony was admissible even though he had not been identified by the defendants who knew his testimony was important to the substance of their defense? Would the district court have struck Kellar's testimony when it was used by defendants for more than impeachment? We do not know because the district court's misstatement of the rule prematurely ended the court's analysis. In light of the district court's legal error we have no occasion to decide which of the competing approaches to the "solely for impeachment" exception should be adopted in this circuit. Under either approach, it is not clear that Kellar's testimony would have been admissible because aspects of his testimony constituted "dual functionality" evidence, and he testified to at least one substantive point that had no impeachment value at all.

## B.

The question remains whether the error was harmless. This court "will reverse an erroneous evidentiary ruling . . . only if the error affects a party's substantial rights." *Huthnance v. District*

*of Columbia*, 722 F.3d 371, 377 (D.C. Cir. 2013) (citing Fed. R. Civ. P. 61). "This analysis depends on a number of factors, including the closeness of the case, the centrality of the issue in question, and the effectiveness of any steps taken to mitigate the effects of the error." *Id.* at 381.

As a preliminary matter, the defendants' position that Standley forfeited any claim of prejudice lacks merit. In her opening brief, Standley contends that the district court's admission of Kellar's testimony "was manifestly prejudicial." Appellant's Br. 10. Standley pointed to the district court's erroneous evidentiary ruling, and "the circumstances of the case . . . make clear . . . that the [erroneous] ruling . . . was harmful," *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009), so Standley's assertion of prejudice sufficed, and she was not required to make any further argument on appeal to preserve that issue. *See id.* Throughout the district court proceedings Standley acted to protect her rights under the Federal Rules of Civil Procedure and to preclude Kellar's testimony because its admission would be harmful to her case. Before trial, she sought to discover defense witnesses, specifically requesting that the defendants "[i]dentify all individuals with personal knowledge of any facts material to the issues raised in this litigation." Pl.'s Mot. in Limine to Exclude Witnesses and Records Exh. 1, at 1 (Apr. 22, 2013); *see* Fed. R. Civ. P. 26(b). Standley also moved *in limine* to preclude the defendants from calling any non-party witnesses, based on their failure of disclosure during discovery. *See* Pl.'s Mot. in Limine to Exclude Witnesses and Records (Apr. 22, 2013). Additionally, she opposed the defendants' subsequent motion to redesignate Kellar as a witness at trial. When the defendants later moved to present Kellar as an impeachment witness, Standley opposed the request, emphasizing among other things that allowing him to testify would prejudice her.

On the merits, we conclude that the district court's legal

error was not harmless. The prejudice to Standley goes beyond hindering her ability to plan for trial in deciding who to call as a witness and in preparing cross-examination of defense witnesses, although that typically is what the federal rules governing discovery are designed to avoid. *See* Advisory Committee Note on 1993 Amendments to subdivision (a) of Rule 26; *Hayes*, 338 F. Supp. 2d at 503. Aside from a largely indeterminate video, which both parties argued to the jury supported their version of events, the evidence at trial pitted Standley's testimony against that of Officer Leach. Under the circumstances, it is highly likely that Kellar's testimony influenced the jury's assessment of the evidence. Although employed by the District of Columbia, Kellar was not involved in the altercation or lawsuit and thus probably would have been viewed by reasonable jurors as an impartial witness who corroborated part of the officer's version of events. The defendants anticipated as much in their closing argument, telling the jury that "[b]ecause [it] heard two very different versions" of the incident, credibility was paramount. The jury might have credited Kellar's testimony, in particular, because, as the defendants argued in closing, he "ha[d] no ax to grind in this case," yet he supported Officer Leach's version of events, which made her appear credible and her version more believable. Importantly, too, Kellar testified that he heard yelling and cursing, from someone other than Officer Leach. That testimony tended to show that the officer had probable cause to arrest Standley for disorderly conduct and that the defendants could not be held liable for false arrest and false imprisonment. Therefore, there is a significant chance that Kellar's testimony influenced the outcome of the case. *See Huthnance*, 722 F.3d at 381. The defendants nonetheless suggest that affirmance is required of at least Standley's excessive force claim because Kellar did not testify about the physical encounter and arrest, but given the "she said/she said" nature of the critical evidence, it is difficult to imagine how Kellar's testimony corroborating Officer Leach would not have affected the jury's

view of the parties' credibility in general, even as to those facts relevant to excessive force.

Accordingly, this court cannot say with fair assurance that the district court's legal error did not affect Standley's substantial rights, and we must reverse and remand for a new trial.