FILED
United States Court of Appeals
Tenth Circuit

March 27, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

RYAN DEVELOPMENT COMPANY,
L.C., d/b/a Agriboard Industries,

      Plaintiff - Appellee,

v.

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY,

      Defendant - Appellant.

No. 11-3356

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 09-CV-01264-EFM)**

Kevin McMaster (and Jennifer M. Hill of McDonald, Tinker, Skaer, Quinn &
Herrington, P.A., on the brief), Wichita, Kansas, for Defendant - Appellant.

Randall Rathbun of Depew, Gillen, Rathbun & McInteer, L.C., Wichita, Kansas,
for Plaintiff - Appellee.

Before **KELLY**, **HOLLOWAY,** and **MATHESON,** Circuit Judges.

**KELLY,** Circuit Judge.

      Defendant-Appellant Indiana Lumbermens Mutual Insurance Company

(ILM) appeals from the district court's denial of its motion for judgment as a

matter of law, or in the alternative, for a new trial following a $2,261,166 jury verdict in favor of Plaintiff-Appellee Ryan Development Company, L.C., d/b/a Agriboard Industries (Agriboard). Ryan Dev. Co. v. Ind. Lumbermens Mut. Ins. Co., No. 09-1264-EFM, 2011 WL 5080309, at *6 (D. Kan. Oct. 25, 2011). Agriboard sued ILM for breach of an insurance contract. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

This case arose from a fire that destroyed a Texas manufacturing facility in April 2009. Aplt. App. 163–64. The owner of the facility, Agriboard, manufactured building panels made of compressed straw. Id. at 167. At the time of the fire, Agriboard was insured under a fire and related losses insurance policy issued by ILM with various coverages including lost income. Id. at 1025, 1063. By May 2009, ILM had paid $450,000; Agriboard filed suit and thereafter ILM paid $1.8 million. Id. at 47. Agriboard continued to seek recovery under the policy, but ILM refused to pay the amount requested and Agriboard re-filed suit, seeking $2.4 million in unpaid coverages. Id. at 80–81.

Agriboard began as a struggling start-up company in Electra, Texas. Id. at 167–68. In 1998, Ron Ryan, the owner of a successful airline, learned of Agriboard's operations and decided to invest in the business. Id. at 237. Mr. Ryan took an increasingly active role in the company, and by 2001, had purchased

- 2 -

at auction all of Agriboard's hard assets. Id. at 238. He quickly learned that Agriboard's production process was flawed and that its product was uncertified. Id. at 238–39. Mr. Ryan rebuilt the production process, and in 2005, obtained the necessary certifications. Id. at 239–40. He also solicited two former airline executives to run Agriboard's operations, and through their efforts, Agriboard constructed several buildings in Wichita, Kansas. Id. at 239, 242.

Mr. Ryan soon hired Mike Huskey, a "top-quality manufacturing guru," to further refine Agriboard's operations. Id. at 244. Mr. Huskey cut waste from the manufacturing process, improved product quality, expedited production, and reduced price. Id. at 245. In 2009, Agriboard temporarily suspended operations in order to rebuild and meet the increasing demand for its product. Id. at 246. On April 9, 2009, however, a fire swept through the property and destroyed the facility. Id. at 248.

Agriboard sought recovery under its insurance policy, soliciting help from Mr. Ryan's long-time accounting firm, Larson & Company, P.A. Id. at 250–51. Derry Larson, principal of the firm, delegated the work to certified public accountants Stephanie Williams and Karl Rump, both of whom were familiar with Agriboard's business. Id. at 310. Ms. Williams, who had handled Agriboard's tax returns and books, calculated the claim for lost income, and Mr. Rump calculated all claims relating to tangible personal property. Id. Both accountants timely submitted proofs of loss to ILM. Id. at 312.

- 3 -

To calculate lost income, Ms. Williams followed ILM's formula. Based on historical data and estimates, she provided amounts—e.g., projected sales for 2009 ($7,120,000), the cost of goods sold on what it would cost to make the product (49.7%), payroll costs, the restoration period (9 months), and extra expenses—and calculated that Agriboard had $2.4 million in total earnings exposure. Id. at 319–22. The policy limit for lost income was $2.2 million, and at the time of trial, ILM had paid only $400,000. Id. at 92. Thus, Agriboard sought the remaining $1.8 million. Id. at 327. Mr. Rump also complied with ILM's request to document Agriboard's physical losses. Id. at 477. He reviewed Agriboard's general ledger and invoices, and spoke with individuals who claimed losses. Id. at 485. He submitted proofs of loss, but again, ILM refused to make complete payment. Id. at 488–89. Thereafter, Agriboard filed suit.

Prior to trial, ILM filed a motion in limine to exclude expert testimony from Mr. Larson, Ms. Williams, and Mr. Rump because Agriboard had failed to designate any expert witnesses as required under Rule 26. Id. at 14–20; see Fed. R. Civ. P. 26(a)(2)(c). The trial court agreed the accountants could not provide expert testimony but doubted the testimony was expert in nature:

> I agree with defense that . . . the hallmark of expert testimony is opinion testimony. It doesn't sound to me like that's what [Agriboard] intends to have [its] accountants testify to, so as I understand what they're going to testify to, I don't think that's 702 expert testimony. I think it's 701 perception testimony, even to the extent that perception or facts perception is based in their specialized knowledge of accountancy.

So I agree they can't give expert opinions.  If they're just testifying as based on their role as the accountants for the plaintiff as to their completion of these forms and where those numbers came from, I think they're entitled to do that.  It doesn't sound to me like defendant necessarily disputes that.  So I'm granting your motion, but I'm not sure it limits the testimony that I understand [Agriboard] intends to solicit from those accountants.

Aplt. App. 939–44.  The three accountants testified at trial, and ILM objected on the basis that they offered expert testimony.  Id. at 308–09, 542–44.

At the close of Agriboard's case-in-chief, ILM moved for judgment as a matter of law on the ground that the evidence was insufficient to proceed.  Id. at 563–71.  ILM renewed its expert testimony objection as well.  Id. at 566–69, 576–78.  ILM admitted, however, that it had not deposed Ms. Williams or Mr. Rump prior to trial.  Id. at 567.  The trial court denied the motion and "reaffirm[ed] [its] ruling that the[] testimony was not expert testimony but was appropriately admitted in this case."  Id. at 586.  ILM then called two witnesses to testify—Steven J. Meils, a forensic accountant, and Randall Thompson, ILM's claims specialist.  Id. at 590–628, 680–725.

At the close of evidence, the trial court conferred with the parties about the proposed jury instructions.  Id. at 744.  ILM objected to Instructions 12 and 13[1] as

---

[1] Instruction 12 provided, "When the terms of the insurance policy, including any endorsements attached thereto, are susceptible of more than one meaning, the policy provisions must be given the meaning which is most favorable to the policyholder."  Aplt. App. 107.  Instruction 13 provided, "When there is a conflict between the printed portions of the policy and the endorsements, the endorsements are controlling."  Id. at 108.

- 5 -

confusing and inappropriate because they went beyond the scope of the evidence. Id. at 755–57. The trial court disagreed, finding sufficient testimony for both instructions. Id. at 757–60. ILM also renewed its motion for judgment as a matter of law, which the trial court denied. Id. at 791–92.

In closing, counsel for Agriboard referenced the Texas endorsement appended to the insurance policy. The endorsement provided, in part, that "[a] fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property." Id. at 1108. Counsel explained:

> What does that mean? That means that any of our claims that weren't personal property, such as the loss of income, which is not a personal property claim, immediately, under Texas law, which became a part of this policy, it was considered a liquidated demand for the entire amount of the policy limits.
> So they didn't even have to do anything at that point. All they had to do was make a demand for the entire policy limits on the income coverage, and they didn't have to do anything at that point. But, of course, there's a whole notebook full of things they did.

Id. at 799–800. ILM did not contemporaneously object to these remarks.

When ILM closed, ILM's counsel questioned Agriboard's decision not to call ILM's corporate counsel, Jack McInteer, as a witness. Id. at 823–24. In rebuttal, counsel for Agriboard stated that ILM had listed Mr. McInteer as a witness. Id. at 831. ILM objected that this information was inadmissible, and the trial court sustained the objection. Id. Agriboard then suggested that ILM had

not called Mr. McInteer because his testimony was damaging.  Id. at 832.

The jury awarded Agriboard $2,261,166 for breach of contract as part of a general verdict.  Id. at 123.  ILM renewed its motion for judgment as a matter of law, or in the alternative, for a new trial, asserting four grounds for relief: (1) prejudicial remarks in Agriboard's closing arguments; (2) confusing and inappropriate jury instructions; (3) inadmissible expert testimony; and (4) a verdict unsupported by the evidence.  Ryan, 2011 WL 5080309, at *1–6.  The trial court denied the motion.  Id. at *6.  ILM timely appealed.

## Discussion

Before the trial court, ILM moved for judgment as a matter of law, or in the alternative, for a new trial.  On appeal, ILM omits its request for judgment as a matter of law.  See Aplt. Br. 15–16.  We thus limit our review to the issue of a new trial, and we review the trial court's decision for abuse of discretion, M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009).  We will reverse "only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1283 (10th Cir. 2003).  We address the issues raised in turn.

A.     Expert Testimony

ILM first argues that a new trial is warranted because Agriboard's

accountants offered expert testimony after the trial court ruled in limine that such testimony was inadmissible. Aplt. Br. 16–21. ILM contends that the accountants' testimony on Agriboard's lost income and insurance coverage was expert in nature because the accountants utilized "specialized training." Id. at 20. We review a trial court's decision to admit evidence for abuse of discretion. James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1212 (10th Cir. 2011).

The trial court admitted the testimony under Rule 701, not 702, of the Federal Rules of Evidence. Under Rule 701, a non-expert witness may offer "opinion[s] . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). The advisory committee notes to Rule 701 explain that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 advisory committee notes. We have noted that Rule 701 allows lay witnesses to offer "observations that are common enough and require a limited amount of expertise, if any." James River, 658 F.3d at 1214 (quotation omitted).

Though accountants often testify as expert witnesses, the trial court reasonably concluded that Ms. Williams and Mr. Rump offered lay testimony given their involvement in preparing Agriboard's proofs of loss and the like. Distinguishing our recent decision in James River, the trial court observed that the accountants used basic arithmetic, personal experience, and no outside expert

- 8 -

reports in calculating lost income and other claims for coverage. <u>Ryan</u>, 2011 WL 5080309, at \*4–5. This finding is supported by the record. For example, Ms. Williams explained how she utilized numbers from Agriboard's records and ILM's formula to reach a value for lost income. Aplt. App. 319–27. Likewise, Mr. Rump explained his process for collecting documentation of Agriboard's loss and submitting those records to ILM. <u>Id.</u> at 485. We find <u>Nester Commercial Roofing, Inc. v. Am. Builders & Contractors Supply Co.</u>, 250 F. App'x 852, 856–57 (10th Cir. 2007), a case ILM cites in its brief, inapposite because it does not address what type of testimony qualifies as expert testimony. Rather, the weight of the authority persuades us that the accountants' testimony falls under Rule 701 as lay testimony.[2] <u>See, e.g.</u>, <u>First Annapolis Bancorp, Inc. v. United States</u>, 72 Fed. Cl. 204, 207 (2006) ("[A] lay witness accountant may testify on the basis of facts or data perceived in his role as an accountant based on his personal knowledge of the company."); <u>Teen-Ed, Inc. v. Kimball Int'l, Inc.</u>, 620 F.2d 399, 402–04 (3d Cir. 1980) (admitting lay opinion testimony by an accountant concerning lost profits).

---

[2] At oral argument, ILM challenged the testimony as exceeding the scope of Rule 701 as well. ILM claimed to have raised this point in its appellate brief and through its supplemental authority, <u>Morton v. Progressive N. Ins. Co.</u>, No 11-6082, 2012 WL 4801110 (10th Cir. Oct. 10, 2012). Our review of the record convinces us otherwise—we find no mention of Rule 701 in ILM's brief and ILM's supplementary authority solely focuses on Agriboard's failure to disclose its purportedly expert witnesses. But even if we were to consider the point, we reject the argument because the accountants' testimony was "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c).

B.    Jury Instructions

ILM next challenges Instructions 12 and 13 on insurance contract ambiguity.  Aplt. Br. 21–24.  ILM asserts that these instructions were (1) inappropriate because Agriboard never elicited testimony that the policy was ambiguous, and (2) designed to confuse the jury.  Id. at 22–24.  "We review a district court's decision to give a particular jury instruction for abuse of discretion, but we review de novo legal objections to the jury instructions." Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154 (10th Cir. 2012) (quotation omitted).  We ask "whether the jury was misled by the instructions and whether it had an understanding of the issues and its duty to resolve those issues." United States v. Cota-Meza, 367 F.3d 1218, 1221 (10th Cir. 2004).

In denying ILM's motion for a new trial, the trial court held the jury instructions were appropriate because ILM's claims specialist, Mr. Thompson, "discussed certain provisions of the policy, including time requirements under the policy and time requirements contained in the Texas endorsement."  Ryan, 2011 WL 5080309, at *3–4.  The trial court explained that, because the relevant time periods were different under the policy and the endorsement, the instructions on how to interpret an insurance policy and what to do when the policy and endorsement conflict were suitable for the jury.  Id.  Our review of the record confirms this finding.  See Aplt. App. 199–201.  Moreover, nothing remotely suggests that Instructions 12 and 13 misled the jury when it interpreted the policy

- 10 -

and awarded Agriboard damages.  Thus, the trial court did not abuse its discretion.

## C.    <u>Closing Arguments</u>

ILM also argues that a new trial is warranted because Agriboard's counsel made improper remarks during closing arguments.  Aplt. Br. 25–33.  ILM contends Agriboard's counsel went beyond the scope of evidence and prejudiced the trial by referencing (1) the Texas endorsement on the policy, and (2) ILM's failure to call Mr. McInteer as a witness.  <u>Id.</u> at 26–33.  At trial, ILM only objected to counsel's reference to Mr. McInteer.  The trial court sustained the objection.

The decision to grant a new trial based upon counsel's misconduct is "left largely to the discretion of the district court."  <u>Abuan v. Level 3 Commc'ns, Inc.</u>, 353 F.3d 1158, 1175 (10th Cir. 2003) (citation omitted).  A new trial is appropriate "only if the moving party shows that it was prejudiced by the attorney misconduct."  <u>Id.</u> (quotation omitted).  Moreover, when a party fails to object, we will correct the error only "in rare instances where it appears that a verdict was the result of passion aroused through extreme argument which clearly stirred the resentment and aroused the prejudice of the jury."  <u>Minshall</u>, 323 F.3d at 1285 (quotation omitted).

ILM first suggests that counsel's reference to the Texas endorsement was prejudicial because Agriboard (1) had not discussed the endorsement at trial, and

- 11 -

(2) mis-spoke in stating that the endorsement applied to loss of income claims. Aplt. Br. 26–30. The trial court disagreed with both points, but ultimately held that the remark did not warrant reversal because the jury was instructed that closing arguments are not evidence. Ryan, 2011 WL 5080309, at *1–2. This conclusion is supported by the record. See Aplt. App. 97 (instructing that closing arguments are not evidence); id. at 199–201 (discussion of the endorsement at trial). Of course, the concern is whether the remark could lead jurors to award damages on an erroneous legal basis. Even assuming error under plain error analysis, the remark was brief and unlikely affected Agriboard's substantial rights, particularly given that the jury was instructed to follow the law as the judge explained.[3] See Aplt. App. 96; Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011) (discussing elements of plain error).

We reach a similar conclusion with respect to counsel's remark about Mr. McInteer. ILM suggests that this comment shifted the burden of proof to ILM. Aplt. Br. 30–33. In denying ILM's motion, the trial court found "this minor procedural issue did not prejudice" ILM and the jury was otherwise instructed that Agriboard had the burden of proof. Ryan, 2011 WL 5080309, at *3. Again, we find support in the record for this conclusion. See Aplt. App. 104 (burden of proof instruction). Further, upon objection, the trial judge told the jury to

---

[3] Ultimately, we do not decide whether the Texas endorsement would apply to claims for loss of income.

- 12 -

disregard counsel's statement, and we must presume the jury followed this direction. See id. at 831; Abuan, 353 F.3d at 1175 ("The timely objection and the sustaining of the objection certainly detracts from a conclusion of prejudice." (quotation omitted)). Thus, the trial court did not abuse its discretion.

D.     Sufficiency of the Evidence

ILM finally argues that the verdict is not supported by the evidence. Aplt. Br. 33–36. Here, ILM identifies different coverages for which the jury "presumably" awarded damages—e.g., lost profits and valuable papers—and explains why the evidence was insufficient under the insurance policy to support these awards. Id. As before, our review is highly deferential. When "a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." M.D. Mark, 565 F.3d at 762 (quotation omitted). "Absent an award that shocks the judicial conscience or raises an irresistible inference that passion, prejudice, corruption or other improper cause played a part in the jury's damage award, we will not disturb the jury's damage award." Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1174 (10th Cir. 2000).

On review, ILM's argument is necessarily speculative. Because the jury returned a general verdict, ILM can only speculate on which bases the jury awarded damages. See Aplt. App. 123. Thus, we cannot say, as ILM argues, that the jury awarded lost profits for too long of a restoration period, or that the jury

- 13 -

awarded damages for valuable papers even though Agriboard never replaced those papers.  See Aplt. Br. 33–36.  Moreover, the jury's award is not excessive such that it shocks this panel's judicial conscience.  See Woolard, 210 F.3d at 1174. Agriboard requested $2.4 million in damages, and the jury awarded $2,261,166, a number well within that range.  Ample evidence was introduced at trial for the jury to conclude that ILM breached its contract, and we cannot second guess the jury's finding.  Thus, the trial court did not abuse its discretion.

AFFIRMED.