**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

LINDA GRIFFETH; DARIN GRIFFETH,

    Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 15-4112
(D.C. No. 1:13-CV-00019-TC)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Linda Griffeth and her husband Darin Griffeth sued the United States for negligence after she suffered serious injuries when her motorcycle struck the bucket of a front-end loader operated by a United States Forest Service employee. After a bench trial, the district court ruled that the Griffeths had failed to prove negligence. On appeal, the Griffeths complain that the district court erred in its rulings on several pretrial and evidentiary motions and in holding that they had failed to prove negligence by Forest Service employees. Because the district court properly exercised its discretion, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

On September 16, 2010, Linda and Darin Griffeth and a friend, Scott Olsen, were riding motorcycles on a back-country road in the Uinta-Wasatch-Cache National Forest in Utah. As the three rode—Darin first, Linda next, and Olsen last—they approached a curve. Coming from the opposite direction was an 8.6-foot wide front-end loader[1] driven by James Roberson, an employee of the United States Forest Service (Forest Service). Although Darin safely passed the loader, Linda did not—her motorcycle and left knee struck the left edge of the loader's bucket (wedging the gas cover into the bucket). Linda was thrown from her motorcycle and suffered a highly comminuted distal fracture to her left leg.

On May 24, 2012, the Griffeths filed an administrative claim under 28 U.S.C. § 2675(a), alleging negligence by Roberson. Because their "basis of claim" is important in this appeal, we quote its full language here:

> Claimant was driving a recreational vehicle north on a back country road in Cache County, Utah when she encountered a large rubber tired loader belonging to the Forest Service (Equipment Number EN 1714) and being driven by Utah Department of Transportation employee James E. Roberson. The loader may not have been in working order, was traveling too fast for the conditions and the driver was not keeping a proper look out and failed to stop or make room in the roadway for the claimant's vehicle to pass. The loader struck claimant's vehicle causing major damage to the vehicle and injury to the claimant.

---

[1] The width of the loader's bucket (103.25 inches) was slightly wider than the width of the loader's wheels (97 inches).

2

Appellee App'x at 46. In the administrative-claims section asking about injuries, Linda stated that she "suffered severe injury to her leg and knee. For a time, she has worried she would lose the leg. The injury has resulted in complete and permanent disability and loss of her job. Linda's husband has a claim for loss of consortium." *Id.*[2]

On January 28, 2013, the Griffeths sued the government. The deadline to amend the pleadings was July 15, 2013. On January 8, 2014, nearly six months after that deadline, the Griffeths moved to amend their complaint, seeking to add new theories of negligence. Specifically, the Griffeths sought to allege that the Forest Service employees acted negligently by not adequately warning of the loader's presence, by not posting proper signage, and by not operating a pilot vehicle ahead of the loader. The magistrate judge recommended denying the motion to amend on three grounds: (1) futility because the Federal Tort Claims Act (FTCA) bars claims not identified in the administrative claim, (2) undue delay in moving to amend, and (3) undue prejudice to the government caused by the delay. The district court adopted the magistrate judge's recommendation.

Based on that ruling, the government filed a motion in limine to exclude from trial all evidence offered to support the pilot-car theory. In addition, the government filed a motion in limine to exclude testimony from Kaitlin Phelps, the Griffeths' designated expert witness on motorcycle operation. After receiving briefing and holding a hearing, and after hearing testimony from Phelps, the district court granted both motions.

---

[2] In their Complaint, the Griffeths alleged a loss-of-consortium claim on behalf of Darin Griffeth.

3

After resolving these pretrial motions, the district court held a three-day bench trial. During its case-in-chief, the government, over the Griffeths' objection, moved to admit deposition testimony from Scott Olsen. Months before the trial, the government designated a portion of Olsen's deposition testimony for use if the Griffeths did not call Olsen as a witness. Unlike with other deposition designations by the government, the Griffeths did not object to the government's designation of Olsen's testimony. The district court allowed the government to introduce Olsen's designated testimony, allowed the Griffeths to designate other portions of Olsen's deposition testimony, and then allowed the government to supplement its designations. At the end of the trial, the district court ruled that Roberson had not acted negligently.

On appeal, the Griffeths challenge some of the district court's pretrial rulings, evidentiary rulings, and the judgment against them. In essence, as we see it, they ask this court to make its own fact findings in place of the district court's and conclude that Roberson was negligent as a matter of law. We decline to do so, and we affirm.

## DISCUSSION

### A. Absence of Negligence

On appeals from bench trials, we review the district court's fact findings for clear error, and its conclusions of law de novo. *Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014). We find clear error only if a fact finding lacks support in the record or if, despite some record support, we still are definitely and firmly convinced that the district court made a mistake. *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1266

4

(10th Cir. 2002). We review fact findings in the light most favorable to the district court's ruling and uphold them if the record permits. *Id.* We also "give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

In assessing Roberson's alleged negligence, the district court held that Utah law governs because the accident occurred there. 28 U.S.C. § 1346(b)(1). The district court used the following negligence standard from the Utah Supreme Court: a plaintiff alleging negligence must prove "four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). The district court found that Linda Griffeth and Roberson owed each other a duty to operate their vehicles with reasonable care, including duties to maintain safe and appropriate speeds, to keep proper lookouts, and to reasonably control their vehicles. *See* Utah Code Ann. § 41-6a-601(1); *Lee v. Mitchell Funeral Home Ambulance Serv.*, 606 P.2d 259, 261 (Utah 1980).

The district court made extensive fact findings after the trial. On the main issue of negligence, the court found that Linda Griffeth was riding a Honda XR100R off-road motor bike that was in excellent condition and had a top speed of 35-40 mph. Linda Griffeth had one earbud in her ear while she was riding, which she testified was for music and phone calls. She also testified that she doesn't ride with both earbuds in because she would be in danger if she could not hear oncoming traffic. The accident took place on Sinks Road, one with a crushed-aggregate-rock road base. The road had recently been

5

resurfaced, so at the time of the accident, it was in excellent condition. At the accident site, the width of Sinks Road was 14.7 feet, and on each side lay another 2 to 2.5 feet of looser rock sloping downward to the terrain's sharp drop-off. Sinks Road is not suitable for painted stripes or lanes and is not wide enough for two traffic lanes of automobiles traveling at normal speed. Users of the road, therefore, must slow and move to the right when they approach and pass oncoming traffic.

The court credited the testimony of Mark Warner, the government's expert witness, who testified that Roberson drove the loader as close as possible to the right side of the road, leaving "quite a bit of space" for Linda Griffeth to pass. Appellant App'x at 793. A photo taken by Warner showed a steep embankment to the right of the road. Warner also testified that Linda Griffeth could have seen the loader from 200 feet[3] and had "ample opportunity to recognize the loader and safely come to a stop if she would have been riding at a reasonable speed." Appellant App'x at 794-95. Linda Griffeth, Warner concluded, caused the accident.

The court also credited Roberson's version of events. Roberson testified that before driving on the roadway he turned on the loader's headlights, hazard lights, flasher lights, and beacon. Forest Service employee Shawn Palmer was driving a road grader (wider than the loader) ahead of Roberson—meaning that all three motorcyclists passed

---

[3] Warner measured the 200 feet from the front of the loader's bucket in its post-accident, resting position. But the district court could have relied on other parts of Warner's testimony to conclude that the loader became visible to Linda Griffeth before it reached that spot.

6

Palmer in the road grader before they reached Roberson in the loader—and Forest Service employee Steven Stucki was driving a pickup truck behind him. Because it was the end of the work week, the Forest Service employees were taking the construction equipment to a shed about ten miles from their worksite. Roberson testified that he was driving as far right on the road as possible and that if he had been driving any further to the right, he would have risked the loader tipping over because of the steep ledge. Roberson said he slowed down when he saw the first motorcyclist. The first rider waved and Roberson waved back. When he then saw Linda Griffeth coming straight for his loader, he slammed his foot brake, pulled his emergency brake, and looked to see if he could turn to avoid her. The loader skidded and at the time of the collision had either fully stopped or was near stopping.

The Griffeths challenge the district court's finding that Roberson was not negligent. First, they allege that Roberson drove the loader too fast and challenge the district court's fact finding that Roberson was driving the loader between 15 and 18 mph. In arguing this, they apparently ask that we conclude that the district court clearly erred in relying on Warner, who testified that Roberson had been driving at a reasonable speed of 15-18 mph when he first saw Linda Griffeth and hit the loader's brakes. Warner's testimony relied on analysis of the loader's skid marks. Warner works for Collision Safety Engineering, an accident-reconstruction and safety-research company, and has investigated more than 300 accidents over his thirty years in that business. Warner also has a bachelor's and a master's degree in mechanical engineering, is a member of, and

has taken classes with, the Society of Automotive Engineers, has published about a dozen articles, and has made several presentations on accident reconstruction.

The Griffeths point out that Roberson testified that he slowed down before he hit the brakes. Therefore, they argue, before the tires locked and skidded, the loader must have been traveling faster than the speed that the court found. Next, the Griffeths argue that the testimony of Forest Service employees Palmer and Stucki strengthen the case that Roberson's driving speed must have been faster: Palmer's testimony that Palmer was driving 25-30 mph and passed by the Griffeth group a mere 0.7 miles from the accident site;[4] Stucki's testimony that Stucki, though in a truck capable of driving faster than Roberson's loader, did not catch up with Roberson until Stucki had driven for five miles.[5] We see no clear error in the district court's fact finding on the loader's speed at the relevant time—when he struck his brakes after seeing Linda Griffeth approaching. The record supports this finding. In reaching its loader-speed determination, the district court relied on expert testimony and testimony from people at or near the accident. In addition, the district court's fact finding depends on its credibility determinations, which we have no basis to challenge. Our role is not to retry the case.

_____

[4] Despite this short distance, Linda and Darin Griffeth also testified that they did not reach Roberson and the site of the accident for another 20-25 minutes.

[5] As we understand it, the Griffeths' argument on the loader's speed assumes a steady speed from leaving the work site until the accident.

Second, the Griffeths challenge the district court's determination about whether Roberson could have driven closer to the right edge of the road and enabled Linda Griffeth to avoid the loader.[6] But both Warner and Roberson testified that the loader was as close to the right edge as possible without tipping over. Roberson testified about the danger presented by "a ledge, a drop off" to the right of the road. Appellant App'x at 490. The sharp decline beginning at the road's shoulder and continuing to the ground below is evident from the photo exhibits. We certainly cannot say that the district court clearly erred in concluding that Roberson was not negligent.

In addition, the Griffeths challenge the district court's finding that Roberson "was on his side of [the] road." Appellant Reply Br. at 6-7, 9. The Griffeths take this as meaning that the entire loader was on Roberson's side of the road, an incorrect characterization given that the loader's 8.6 foot width exceeded half the 14.7 foot roadway. Even Roberson confirmed that in his testimony. But we don't see the district court saying that the entire loader was on Roberson's side of the road. Instead, we see the district court finding that Roberson had been driving as close to the right edge of Sinks Road as possible without going off the right-hand ledge. The district court did not subscribe to the Griffeths' apparent theory of liability—that Roberson must be negligent if he remained on the road instead of rolling down the slope abutting the road. And in

---

[6] In a related argument concerning whether Roberson acted negligently, the Griffeths dispute the position of Linda Griffeth on the roadway. The issue is at essence a dispute between the credibility and accuracy of conflicting testimony—Linda Griffeth's versus Mark Warner's and James Roberson's—and so fell within the district court's discretion.

9

deciding the issue, the district court knew that both of Linda Griffeth's companions were able to pass the loader without incident.

Third, the Griffeths argue that the district court erred in determining that Linda Griffeth could see the loader from 200 feet away. The district court heard conflicting evidence on the visibility of the loader in Linda Griffeth's sight line. Warner testified that the loader would have been visible from 200 feet to an attentive, approaching driver. Griffeth testified otherwise. Counsel for the Griffeths challenged Warner's testimony during cross examination, and now in the briefs, but Warner explained his conclusion and the district court agreed with it. The district court did not clearly err in crediting Warner's account.[7]

## B. Motion to Amend

Though courts should freely grant leave to amend when justice requires it, Fed. R. Civ. P. 15(a)(2), we review district-court denials of that leave for abuse of discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). District courts may consider a wide range of factors, including undue delay, bad faith, dilatory motive, undue prejudice, and futility. *Id.* A district court abuses its discretion when it clearly errs; goes beyond the permissible choices; or acts arbitrarily, capriciously, whimsically, or

---

[7] And because the Griffeths did not raise their negligence per se claim based on a Utah statute (Utah Code Ann. § 41-6a-1708 (repealed 2015)) in either their administrative claim or at the district court, we view it as forfeited. *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014).

manifestly unreasonably. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015).

The district court properly based its denial of the motion to amend on three valid factors: futility, undue delay, and unfair prejudice. The court held that the amendment would be futile because the FTCA waives the federal government's sovereign immunity only when the plaintiff has exhausted that claim administratively.[8] 28 U.S.C. § 2675(a). The administrative claim must give notice of the underlying facts that will be used in the civil suit. *Staggs v. United States ex rel. Dep't Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005). In reviewing the Griffeths' administrative claim, the district court found that it had simply alleged Roberson's negligence in driving the loader, not any negligent failure by Roberson or others to adequately warn, to properly sign, or to use a pilot car. Thus, the court held that the FTCA barred the new claims.

The court also based its denial of the motion to amend on grounds of undue delay (the Griffeths did not file the motion to amend until nearly six months after the deadline for amendments to pleadings) and of undue prejudice to the government. In their appeal, the Griffeths haven't challenged either the undue-delay or unfair-prejudice justifications for the denial. So they waived their responses to those justifications, *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1239 n.3 (10th Cir. 2016), and those waivers furnish independent bases to affirm the district court's ruling.

---

[8] In other words, the agency must make a final denial of the claim, which occurs either when the agency actually denies the claim or fails to deny the claim six months after a claimant makes the claim. 28 U.S.C. § 2675(a).

11

## C. Pilot-Car Evidence

We review a district court's rulings on motions in limine for abuse of discretion, *Seeley v. Chase*, 443 F.3d 1290, 1293 (10th Cir. 2006), and likewise for exclusions of evidence, *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 939 (10th Cir. 2005). Only if we firmly believe that the district court made a clear error in judgment will we reverse. *Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005). Otherwise, district courts have wide discretion for evidentiary rulings. *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

By denying the Griffeths' motion to amend their complaint, the district court kept them from asserting a negligence claim based on lack of a pilot car. The Griffeths argue that the district court erred in granting the motion in limine excluding evidence on the government's failure to operate a pilot car ahead of the loader. Absent being allowed to amend their complaint to state a pilot-car claim, the evidence would be irrelevant. Thus, we affirm the district court's granting of a motion in limine on this issue.

## D. Deposition Testimony of Scott Olsen

We review a district court's admission of evidence for abuse of discretion. *Ryan Dev. Co., L.C. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013). At least 30 days before trial, parties must designate any testimony they wish to admit through the deposition transcript rather than by live testimony. Fed. R. Civ. P. 26(a)(3)(A)(ii), (B). The opposing party then has 14 days to object. Fed. R. Civ. P.

12

26(a)(3)(B). The opposing party waives any objection not made within that time unless the court excuses the failure for good cause. *Id.*[9]

Here, the government properly designated pages of Olsen's testimony and advised it would move to admit that testimony if the Griffeths did not call him as a witness. The Griffeths timely objected to deposition designations for three other witnesses, but did not object to Olsen's. Thus, the district court correctly admitted the transcript into evidence over their late objection to the designation, which they had waived.

**E. Kaitlin Phelps**

We review for abuse of discretion a district court's exclusion of expert witnesses. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Proponents of expert testimony have the burden to show admissibility. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A witness may testify as an expert if she is qualified as such by "knowledge, skill, experience, training, or education," if her specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," if her testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods," and if she "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In evaluating the admissibility of expert testimony, the district court first considers whether the witness qualifies as an expert, and then whether the proffered testimony is both relevant and reliable, as assessed by its underlying reasoning and methodology. *Nacchio*, 555 F.3d at 1241; *Conroy*, 707 F.3d at 1168.

---

[9] Except for objections under Fed. R. Evid. 402 or 403. Fed. R. Civ. P. 26(a)(3)(B).

Experience alone may qualify a witness as an expert, but the witness still must explain how her experience is sufficient to lead to a conclusion based on the facts of the case. *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003). Though it has many components, the standard is generally liberal and flexible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 594 (1993).

The Griffeths sought to have Phelps testify that Linda Griffeth operated her motorcycle safely and reasonably on the day of the accident. But the district court held that Kaitlin Phelps did not satisfy either part of the expert-witness test. At the expert-testimony hearing, Phelps testified that she had frequent recreational experience riding motorcycles. She had no formal training or licenses, she had never ridden on the road where the accident took place before making her conclusions,[10] and she had never testified as an expert on motorcycle riding. Nor did Phelps explain how her experience supported her conclusions about Linda Griffeth's accident. Given those deficiencies, the district court properly exercised its discretion to conclude that Phelps was not qualified as an expert and that her testimony would not be the product of reliable methods and principles. *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133-34 (10th Cir. 2009); *Nacchio*, 555 F.3d at 1258. Phelps's conclusory statement that her experience supported her conclusions is certainly insufficient. *See Nacchio*, 555 F.3d at 1258. The Griffeths protest that Phelps's testimony would have greatly aided the trier of fact, but any benefit

---

[10] She had ridden on Sinks Road by the time of the trial.

that Phelps's expert testimony might have provided is of no importance if she was not in fact qualified to testify as an expert.

## CONCLUSION

For the reasons above, we affirm the pretrial and evidentiary rulings and the judgment of the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge