**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 7, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EVELYN HOHENBERGER, individually
and as representative of the estate of
Thomas Hohenberger,

     Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

     Defendant - Appellee.

No. 15-1494
(D.C. No. 1:14-CV-00337-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Thomas Hohenberger had been receiving medical care from the Department of

Veterans Affairs (VA) when he died from coronary artery disease that had not been

diagnosed or treated. His widow, Evelyn Hohenberger, acting individually and as the

representative of his estate, sued the United States for medical malpractice under the

Federal Tort Claims Act (FTCA). After a bench trial, the district court found in favor

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

of the United States, and Mrs. Hohenberger appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Mr. Hohenberger, born in 1946, was a Vietnam veteran who received medical care from a VA facility in Grand Junction, Colorado. Between 1998 and July 2011, his primary care physician was Paul Preston, M.D. While under Dr. Preston's care, Mr. Hohenberger was treated for several conditions, including chronic obstructive pulmonary disease (COPD), osteoarthritis, low testosterone, and post-traumatic stress disorder (PTSD). He was a smoker and considered to be an alcoholic. Dr. Preston's last exam of Mr. Hohenberger was in February 2011.

In July 2011, Kathleen Ono, D.O., replaced Dr. Preston as Mr. Hohenberger's primary care physician. Dr. Ono, however, never saw Mr. Hohenberger in person. On September 24, 2011, he died suddenly at home. The cause of death was ischemic heart disease due to coronary artery atherosclerosis. Mr. Hohenberger had not been diagnosed with or treated for coronary artery disease.

Mrs. Hohenberger, on behalf of herself and her husband's estate, filed an administrative tort claim and then this FTCA suit. She alleged that Dr. Preston failed to properly diagnose and treat Mr. Hohenberger's coronary artery disease, leading to his death. The parties consented to have a magistrate judge preside over the case and then filed several pre-trial motions.

Mrs. Hohenberger moved for summary judgment as to liability and moved to exclude the United States' expert witness. The district court denied both of those

2

motions. The United States filed a motion to exclude Mrs. Hohenberger's expert witness, which the district court also denied. The United States was more successful with its motion to preclude Mrs. Hohenberger's expert witness from testifying about Dr. Ono's performance. The district court granted that motion because the complaint focused on Dr. Preston's negligence and Mrs. Hohenberger had never moved to amend to include allegations about Dr. Ono. Thus, the court concluded, Dr. Ono's performance was not relevant to the case as Mrs. Hohenberger had framed it and testimony about Dr. Ono would not assist the court in deciding the issues before it.

The district court conducted a three-day bench trial. In addition to hearing testimony from Mrs. Hohenberger, the court heard testimony from three medical witnesses: (1) Dr. Preston, who is board-certified in internal medicine and who testified both as a fact witness and as an expert in primary care medicine; (2) the United States' expert witness, John Johnson, M.D., who is board-certified in family medicine; and (3) Mrs. Hohenberger's expert witness, Michael Jones, M.D., who is board-certified in cardiovascular medicine and was board-certified in internal medicine from 2000 to 2010. The medical records showed that over the years Mr. Hohenberger presented with various complaints, including shortness of breath, fatigue, and lightheadedness. The medical witnesses differed on the proper interpretation of those complaints and the appropriate standard of care for a primary care physician.

Dr. Preston reviewed his treatment of Mr. Hohenberger. He testified that Mr. Hohenberger had no symptoms of coronary artery disease. He did not present

3

with the primary symptom, angina, and the symptoms he reported were more consistent with other conditions, such as COPD and low testosterone. Dr. Preston opined that the standard of care for an asymptomatic patient was to conduct a yearly cardiovascular risk assessment and to treat modifiable risk factors for coronary artery disease. He testified that it was his practice to do a cardiovascular risk assessment at every primary care visit. He identified smoking as Mr. Hohenberger's only modifiable risk factor, and he testified that he consistently advised Mr. Hohenberger to stop smoking or at least to cut down on his smoking.

The United States' expert, Dr. Johnson, testified similarly to Dr. Preston. He opined that the standard of care for a primary care physician was focused on prevention, identifying a patient's risk factors and attempting to modify them. His calculations put Mr. Hohenberger in the intermediate range. Treatment for asymptomatic patients, whether low, intermediate, or high risk, was to modify risk factors. Dr. Johnson considered Mr. Hohenberger to be asymptomatic for coronary artery disease because his symptoms were not characteristic of coronary artery disease. Accordingly, Dr. Johnson opined that Dr. Preston met the standard of care.

In contrast, Mrs. Hohenberger's expert, Dr. Jones, opined that Mr. Hohenberger's complaints were symptoms of coronary artery disease. He therefore did not consider Mr. Hohenberger to be an asymptomatic patient. In light of Mr. Hohenberger's age, his status as a smoker, and his medical history, Dr. Jones testified that the standard of care required more aggressive evaluation for cardiac disease. At the least, Dr. Preston should have ordered an exercise stress test. Then,

4

depending on results, the initial test could be followed by other treatments such as an angiogram. When questioned about persons considered to be an intermediate risk, Dr. Jones reaffirmed that the appropriate treatment was an exercise stress test. He further opined that had Dr. Preston ordered the additional testing, Mr. Hohenberger probably would have lived longer.

The district court found in favor of the United States. It credited Dr. Johnson's and Dr. Preston's opinions over Dr. Jones's opinion, finding that Mr. Hohenberger's complaints were not symptoms of coronary artery disease. Having found that Mr. Hohenberger was asymptomatic, it further found that the applicable standard of care was for Dr. Preston to identify risk factors and attempt to modify them, which he did. It concluded that Mrs. Hohenberger had failed to demonstrate by a preponderance of the evidence that Dr. Preston breached the standard of care by not performing further testing for and treatment of coronary artery disease.

## DISCUSSION

### I. Summary Judgment

Mrs. Hohenberger first argues that the district court erred in denying her pre-trial motion for summary judgment. She acknowledges that Dr. Jones and Dr. Johnson offered different opinions regarding the standard of care. She argues, however, that summary judgment was appropriate because (1) Dr. Johnson's opinion did not sufficiently oppose Dr. Jones's opinion at the time of the motion's filing, and (2) Dr. Johnson's opinion was not supported by the undisputed facts. In response,

the United States points to the rule that "the denial of a motion for summary judgment is not reviewable on an appeal following the entry of final judgment after a trial where the district court's decision on the motion was based on its determination that there were genuine issues of material fact in dispute." *Stump v. Gates*, 211 F.3d 527, 532 (10th Cir. 2000); *see also Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992) ("[S]ummary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal." (internal quotation marks omitted)).

The district court denied summary judgment because it found the existence of a factual dispute:

> I cannot find, as a matter of law, that . . . there are no facts that the defendant could not offer at trial that would support the defendant's position. I mean, this is fundamentally a dispute between experts, and, folks, you might as well just accept that reality. Your expert says A and their expert says B, that's what experts do. But fundamentally, since I have to draw all inferences in favor of the non-moving party, since I cannot draw any conclusions with respect to credibility, I do not see how, in the context of this motion, I can find that one expert is right and the other expert is wrong.

Aplt. App., Vol. 3 at 471-72. Mrs. Hohenberger attempts to frame her challenges as involving questions of law, but as the district court recognized, this case fundamentally turned on the facts. We therefore agree with the United States that the summary judgment decision is not reviewable on appeal.

## II.    Exclusion of Testimony

Mrs. Hohenberger next argues that the district court erred in granting the government's pre-trial motion to preclude testimony about Dr. Ono's performance.

6

The government filed that motion after Mrs. Hohenberger moved for summary judgment on liability, arguing that both Dr. Preston and Dr. Ono were negligent. Concluding that the complaint pleaded only a claim based on Dr. Preston's negligence, the district court held that evidence about another doctor's performance was not relevant to the case, *see* Fed. R. Evid. 401, and would not assist the court in deciding the issues before it, *see id.* 702(a). "The district court's decision to admit or exclude evidence generally, including expert testimony, is typically reviewed under an abuse of discretion standard." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001) (Rule 702); *see also Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005) (Rule 401).[1] Under this standard, "[a] trial court's decision will not be disturbed unless this Court has a definite and firm conviction that the trial court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Ralston*, 275 F.3d at 968-69 (brackets and internal quotation marks omitted).

We are not persuaded that the district court abused its discretion in excluding testimony about Dr. Ono's performance. The record is clear that Mrs. Hohenberger was focused on Dr. Preston's performance when she initiated her case. Her

---

[1] The parties disagree on the appropriate standard of review for this issue. We reject both parties' proffered standards. Mrs. Hohenberger approaches the issue as one of pleading, which would involve de novo review. Her discussion of Fed. R. Civ. P. 12(b)(6) is misplaced, however, because the district court relied on Fed. R. Evid. 401 and 702. In contrast, the United States urges plain error review because Mrs. Hohenberger did not make an offer of proof. *See* Fed. R. Evid. 103(a)(2). But we agree with Mrs. Hohenberger that the substance of Dr. Jones's testimony regarding Dr. Ono's performance "was apparent from the context," as allowed by Rule 103(a)(2).

administrative claim names as witnesses only Mrs. Hohenberger and Dr. Preston. The complaint names as defendants the United States and Dr. Preston, and identifies only Dr. Preston by name as a negligent actor.[2] Further, in her initial discovery responses, Mrs. Hohenberger failed to identify Dr. Ono as a medical practitioner that allegedly was negligent. Apparently Dr. Ono came to Mrs. Hohenberger's attention during discovery. But Mrs. Hohenberger did not supplement her initial discovery responses or her initial expert report until after she filed her motion for summary judgment, and she never moved to amend her complaint to discuss Dr. Ono as well as Dr. Preston.

Mrs. Hohenberger points to allegations in the complaint referring to "[t]he government," "[t]he employees of the VA who treated Mr. Hohenberger," and "[t]he VA and its employees," which would encompass Dr. Ono as well as Dr. Preston. Aplt. Br. at 21-22 (internal quotation marks omitted). This general language, however, must be read in context with the remainder of the complaint and in light of other events in the case (such as Mrs. Hohenberger's initial disclosures and the United States' scope-of-employment certification, which was limited to Dr. Preston). In the circumstances, these general references do not demonstrate that the district court abused its discretion in concluding that Mrs. Hohenberger had framed her case

---

[2] Mrs. Hohenberger dismissed Dr. Preston as a defendant after the United States certified that he was acting within the scope of his employment. The United States is the only proper defendant in an FTCA case. *See Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

as focusing on Dr. Preston's performance, and therefore Dr. Ono's performance was not relevant to the issues before the court.

## III. Verdict for the United States

Finally, Mrs. Hohenberger challenges the district court's verdict in favor of the United States. When the district court has conducted a bench trial, we review conclusions of law de novo and findings of fact for clear error. *See United States v. Estate of St. Clair*, 819 F.3d 1254, 1264 (10th Cir. 2016). "A finding is clearly erroneous when the reviewing court has a definite and firm conviction that it is mistaken, even though there may be some evidence to support it." *Id.* (internal quotation marks omitted).

Mrs. Hohenberger takes issue with the district court's evaluation of Dr. Jones's testimony, arguing that the court "was clearly erroneous when [it] held that Dr. Jones' opinion was not supported by the medical literature and the [United States Preventive Services Task Force]." Aplt. Br. at 28. But that is not what the district court stated. In evaluating the witnesses' testimony, it stated that "Dr. Jones's opinions *are not as consistent with* the [United States Preventive Services Task Force] and medical literature as are the opinions of Dr. Preston and Dr. Johnson." Aplt. App., Vol. 2 at 457 (emphasis added). Mrs. Hohenberger fails to show that the district court's actual finding is clearly erroneous.[3] Further, the district court gave other reasons for not crediting Dr. Jones's testimony, including that his opinions

---

[3] We decline Mrs. Hohenberger's invitation to take judicial notice of materials that were not introduced in the district court.

9

were based on hindsight and on a number of symptoms that were not present in the record, and that he was not aware of all of Mr. Hohenberger's medical conditions. Mrs. Hohenberger does not challenge these other reasons.

Mrs. Hohenberger also asserts that "the record is ripe with evidence that Mr. Hohenberger suffered cardiac symptoms." Aplt. Br. at 29. But whether his complaints were symptoms of coronary artery disease or of other conditions was a question for trial, and the district court found that the symptoms were not symptoms of coronary artery disease. Mrs. Hohenberger's adamant belief to the contrary does not establish that the district court's finding was clear error.

## CONCLUSION

The judgment of the district court is affirmed. Mrs. Hohenberger's unopposed Renewed Motion to Seal Documents is granted.[4] Mrs. Hohenberger's opposed Motion to Supplement the Record is denied. The court did not consider the material contained in the proposed supplemental record.

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[4] At the court's order, Mrs. Hohenberger filed a redacted version of Appendix Volume 5, which is publicly accessible. The originally filed, unredacted Appendix Volume 5 shall remain sealed.

10