**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICK SLAVIN,

     Plaintiff - Appellant,

v.

GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,

     Defendant - Appellee.

No. 18-1347
(D.C. No. 1:14-CV-01839-RPM-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **EID**, Circuit Judges.
_____

Plaintiff Patrick Slavin appeals from the district court's judgment entered after

a jury trial in favor of Defendant Garrison Property and Casualty Insurance

Company, challenging the court's evidentiary rulings and a jury instruction.

In June 2012, a hailstorm damaged the front façade of Plaintiff's home,

including its windows and brickwork.  Plaintiff filed a claim under his homeowner's

insurance policy with Defendant, which contained a replacement-cost provision.

With respect to the brickwork, Plaintiff discovered that the "Dover Cream" bricks

used in the façade were out of stock, but he eventually found a manufacturer that

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

would produce new Dover Cream bricks in a special brick-run consisting of a minimum 50,000 bricks at a cost of approximately $21,000. Plaintiff submitted a total estimate of more than $59,000 to repair the brickwork, which included the cost of producing new Dover Cream bricks. Defendant responded by offering instead to pay the cost to replace the entire façade using a different brick, which entailed the use of substantially fewer bricks at a total cost of between roughly $17,000 and $24,000. Plaintiff rejected Defendant's offer, and Defendant refused to pay the cost to repair or replace the façade using new Dover Cream bricks.

Meanwhile, as Defendant continued to adjust the claim, it issued Plaintiff a number of checks. The parties dispute what portions of the claim the checks' amounts were meant to cover. Adding to the confusion, Plaintiff did not cash some of the checks, and Defendant claims it issued certain amounts merely to replace uncashed, stale checks.

Plaintiff filed this diversity suit in May 2014, asserting claims for breach of contract, common-law bad-faith breach of contract, and violation of Colo. Rev. Stat. § 10-3-1115, which prohibits insurers from unreasonably delaying or denying a claim for benefits owed. During litigation, the manufacturer stated it was willing to produce a reduced run of 16,000 bricks, costing approximately $11,000. Thereafter, Plaintiff invoked a provision in the policy allowing for an appraisal of the loss amount. The appraisers agreed that the loss amount was $23,623.25 for the brick and $12,884.61 for the windows, and the parties subsequently stipulated—and the court ruled—that the appraisal award, including the amounts for both brick and window

2

damage, was conclusively the amount of the covered benefit under the policy. Following the appraisal award, Defendant issued Plaintiff more checks, and again there is a dispute regarding what amounts were for the windows, the brickwork, other repairs, or to replace stale, un-cashed checks.

Prior to trial, Plaintiff voluntarily withdrew his breach-of-contract and common-law bad-faith claims. Thus, Plaintiff proceeded to trial solely on his § 10-3-1115 claim, and the only issues for the jury to decide were whether Defendant had delayed or denied a claim for benefits owed and, if so, whether the delay or denial was unreasonable. After a four-day trial, the jury returned a verdict, finding that Defendant had not denied or delayed payment of a benefit. The district court accordingly entered judgment in favor of Defendant.

On appeal, Plaintiff challenges three of the district court's evidentiary rulings as well as one instruction given to the jury. We address these issues in the order they arose in the district court.

## I.     Evidentiary Rulings

*First*, Plaintiff argues that the district court erred by excluding evidence regarding adjustment for damage to Plaintiff's windows. During the initial stages of the adjustment process, the parties briefly disputed the cost and extent of repairs needed for the damaged windows, but, after some discussion, Plaintiff suggested he was satisfied with the adjustment for the windows and did not raise the issue again. Later, when trying to resolve the parties' disagreement prior to suit, Plaintiff's attorney advised Defendant that "masonry is the sole issue in dispute." (Appellant's

3

App. at 718.)  Both Plaintiff's initial and amended complaints echoed counsel's understanding, stating that "masonry . . . is the issue in dispute."  (*Id.* at 50, 69.)  Indeed, Plaintiff concedes that the operative complaint does not mention windows—because, at the time he filed it, there was no factual basis to include allegations concerning them—and that the complaint contains no allegations of unreasonable delay with respect to adjusting for window damage.

As Plaintiff seems to acknowledge, window-damage adjustment did not arise as an issue again until the appraisal award set the loss amount for window damage.  Following the award, the parties disputed whether window damage was an issue in the litigation.  Most notably, Defendant, in its summary judgment motion, urged the district court to ignore evidence of window damage as immaterial to Plaintiff's claims.

In its ruling on the summary judgment motion, the court rejected the argument that the breach-of-contract claim was "limited to [Defendant's] payment for repair of the damaged brick" because Plaintiff's complaint alleged that Defendant breached the policy by "fail[ing] to ensure that Plaintiff's home would be repaired or rebuilt to the condition that it was in prior to any loss," an allegation "sufficient to encompass the assertion that [Defendant] failed to pay the entire cost of his property claim," including both brick and window damage.  (*Id.* at 1500.)  The court strongly suggested, however, that the complaint failed to allege window damage as a basis for Plaintiff's other claims, explaining that the "actions [Plaintiff] asserts constitute bad faith" are Defendant's "actions in assessing the cost to repair the damaged brick."  (*Id.*)

4

After the district court denied Defendant's motion for summary judgment, the parties argued over whether Defendant's expert's opinions concerning the reasonableness of Defendant's adjustment for window damage should be excluded. In deciding the issue, the court explained that Plaintiff's complaint "does not allege[] any misconduct or bad faith by [Defendant] in its handling of Plaintiff's claim related to the repair of his windows; rather, the factual allegations relate solely to the issue of the repair/replacement of the bricks." (*Id.* at 2280.) As a result, the court determined that "evidence [of Defendant's window-damage adjustment] is not relevant or admissible at trial." (*Id.*)

"We review the district court's exclusion of evidence for abuse of discretion," *Eller v. Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir 2013), and we will not reverse the district court's evidentiary ruling unless we are convinced that its "conclusion is arbitrary, capricious, whimsical or manifestly unreasonable" or that it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1213 (10th Cir. 2013) (internal quotation marks omitted).[1] A court does not abuse its discretion by excluding evidence that is not relevant to the claims alleged in the complaint. *See*

---

[1] Defendant argues that we need not review Plaintiff's challenge because Plaintiff waived the issue by taking litigation positions fundamentally inconsistent with his challenge to the district court's decision to exclude evidence of window damage. *See United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183–86 (10th Cir. 2009). Defendant also argues that, even if the issue is not waived, our review should be for plain error because Plaintiff failed to make the requisite offer of proof regarding window damage. *See Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1147 (10th Cir. 2009). We decline to address these arguments because, even applying the abuse-of-discretion standard Plaintiff asserts, we perceive no reversible error in the district court's decision.

*Griffeth v. United States*, 672 F. App'x 806, 813 (10th Cir. 2016); *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 800–01 (10th Cir. 1997), *abrogated on other grounds as recognized by Eisenhouer v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Thus, where the operative complaint does not give a defendant fair notice of a claim that the plaintiff attempts to assert later in litigation, a court may exercise its discretion to exclude evidence of that claim. *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 792 (7th Cir. 2011).

Plaintiff primarily contends that the district court abused its discretion because his complaint sufficiently alleged that Defendant unreasonably denied or delayed payment for the window damage. We are not persuaded. A fair reading of the operative complaint reveals that Plaintiff based his allegations of unreasonable denial or delay on Defendant's conduct with respect to the brick damage only. Although the district court discerned an allegation of breach encompassing window damage from a single allegation regarding Defendant's general failure to pay the cost to bring the home to its pre-loss condition, it did not abuse its discretion in viewing the complaint as failing to allege that Defendant unreasonably denied or delayed paying for the window damage.[2] If, after the appraisal award, Plaintiff wished to pursue a § 10-3-

_____

[2] Plaintiff contends in his reply brief that the district court's decision was manifestly unreasonable because the language of the allegation the court relied on in determining that Plaintiff's breach claim encompassed window damage—*i.e.*, that Defendant failed to ensure Plaintiff's home was repaired to its pre-loss condition—is repeated in his allegations concerning his § 10-3-1115 claim. In Plaintiff's view, because the language in both allegations is similar and because the court understood one allegation to encompass window damage, it should have likewise viewed the other allegation as encompassing window damage as well. The court, however,

6

1115 claim based on Defendant's adjustment for window or other non-brick-related damage, he could have sought leave to amend his complaint to include such allegations. He did not do so.[3]

Plaintiff next argues that the district court's ruling is inconsistent with the requirements for stating a claim in, and making amendments to, a pleading in Fed. R. Civ. P. 8 and 15. He contends that Rule 8 does not require plaintiffs to plead every fact that might underly a claim already asserted in the complaint and that Rule 15 does not require amendment when evidence supporting a previously-pled claim is revealed in discovery. Plaintiff's reliance on the rules governing pleadings is misplaced. Whether a plaintiff has satisfied the standards of pleading is a different question than whether a court has properly excluded evidence of a claim not raised in the complaint. *See Hohenberger v. United States*, 660 F. App'x 637, 641–42 & n.1 (10th Cir. 2016). Further, even if we approached the issue as one of pleading as Plaintiff suggests, we have already determined that the operative complaint, fairly

---

relied on a distinction between claims for breach and claims under § 10-3-1115. Unlike for a breach claim, a plaintiff pursuing a § 10-3-1115 claim must allege and then prove the defendant acted unreasonably and, as the district court observed, the only unreasonable conduct Plaintiff alleged related solely to Defendant's adjustment for brick damage. Thus, although other judges might have understood Plaintiff's generalized § 10-3-1115 allegations to encompass window damage, we cannot say the district court's reliance on the specific allegations regarding unreasonable conduct, which related solely to brick damage, was manifestly unreasonable.

[3] Plaintiff did file a motion for leave to file a second amended complaint, which would have included allegations regarding Defendant's adjustment for window damage. However, the parties jointly withdrew the motion before the court ruled on it.

read, does not allege that Defendant unreasonably denied or delayed paying for the window damage. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) ("Despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." (internal quotation marks and alteration omitted)). Thus, the rules Plaintiff relies on do not aid him.

Plaintiff also argues the ruling was manifestly unreasonable because the district court "reversed course" from its previous rulings. (Appellant's Opening Br. at 24.) We agree with the district court, however, that neither of the two previous rulings Plaintiff identifies are inconsistent with the ruling he now challenges. In its summary judgment order, the court ruled that Plaintiff's allegation that Defendant generally failed to ensure his home was repaired to its pre-loss condition was sufficient to encompass window damage for purposes of the breach claim, but it did not rule that this allegation was sufficient to encompass window damage for the § 10-3-1115 claim. If anything, the court strongly suggested the opposite. Likewise, the court's determination that the appraisal award's amount for the window damage constituted part of the "covered benefit" for purposes of the § 10-3-1115 claim is not a determination that Plaintiff's complaint sufficiently alleged that Defendant unreasonably denied or delayed payment for the window damage.[4] Further, even if

---

[4] The scope of the "covered benefit" for purposes of a § 10-3-1115 claim remains unsettled. *See Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-00982-LTB-KLM, 2016 WL 7228830, at *3 (D. Colo. Dec. 14, 2016); *see also State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 504 (Colo. 2018) (noting the statute does not define

the court's decision to exclude window-damage evidence was somehow inconsistent with its previous rulings, Plaintiff cites no authority for his proposition that a court may not "reverse course" from its previous evidentiary rulings, let alone that doing so is manifestly unreasonable. *See Spring Creek Exploration & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1023–24 (10th Cir. 2018) (noting the district court's "inherent power to reconsider its interlocutory rulings" (internal quotation marks omitted)).

*Second*, Plaintiff argues that the district court abused its discretion by preventing him from introducing a letter—sent by Defendant's claims manager to Plaintiff after the lawsuit began—to rebut testimony regarding amounts Defendant had issued for brick repair prior to suit. We do not address the merits of this argument, however, because we agree with Defendant that Plaintiff waived the issue under the invited-error doctrine.

Prior to trial, Plaintiff moved to exclude all evidence of events occurring after the lawsuit was filed, arguing that Defendant's post-filing conduct would have no bearing on whether Defendant acted reasonably in processing his claim and that evidence of post-filing appraisal and accounting would complicate trial. The district

the term). At least one court has suggested that the "covered benefit" may be "the total amount of the benefit ultimately owed by the insurer" rather than "the amount of the benefit that was owed but unreasonably delayed or denied by the insurer." *Peden*, 2016 WL 7228830, at *3. Under this view of the statute, a determination of the amount of the covered benefit is divorced from the determination of whether benefits owed have been unreasonably denied or delayed. This appears to be the view taken by the district court in this case, and, because Plaintiff does not challenge it, we do not asses the merits of that view here.

9

court granted the motion in part and excluded evidence of certain post-filing events from trial, including the appraisal and accounting process, concluding the value of such evidence was outweighed by the risk of confusion and undue delay.

At trial, Defendant set out to show that it paid the full amount of the covered benefits before litigation commenced and elicited testimony from its claims manager and another employee that Defendant had paid Plaintiff more than $23,623.25 for brick damage before Plaintiff filed suit. In response, Plaintiff's counsel attempted to introduce a post-filing letter the claims manager sent to Plaintiff following the appraisal, which, in Plaintiff's view, states that Defendant paid only about $10,000 for brick damage prior to suit. Defendant objected on the ground that the court had already ruled that evidence of post-filing events would be excluded. The court resolved the issue by excluding the letter and prohibiting Defendant from eliciting further testimony or arguing at closing that its pre-litigation payments for the brickwork exceeded the appraisal award.

"The invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011). Invited error is thus "a form of waiver," as it involves "the intentional relinquishment or abandonment of a known right." *Id.* (internal quotation marks omitted). If a party waives an argument by inviting the putative error he complains of, appellate review is not available. *See United States v. Jereb*, 882 F.3d 1325, 1335 (10th Cir. 2018).

10

Essentially, Plaintiff argues the district court erred by enforcing an exclusionary rule he urged it to adopt, an argument near the heart of the invited-error doctrine. *See United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005); *see also Jereb*, 882 F.3d at 1340 (noting the "robustness" of the doctrine). Plaintiff specifically asked the court to categorically exclude evidence of post-filing events as irrelevant and overly confusing when weighed against its probative value, and the court agreed. There is no dispute that the letter Plaintiff now says should have been admitted falls within that category of evidence. Thus, the court's exclusion of the letter is an "immediate consequence" of its prior decision to grant Plaintiff's motion to exclude the category of evidence to which the letter indisputably belongs, and straightforward application of the invited-error doctrine prevents Plaintiff from "set[ting] aside" that consequence now. *Jereb*, 882 F.3d at 1338.

Plaintiff seems to argue for an exception to the invited-error doctrine based on the circumstances of this case. He contends that, because the doctrine is equitable in nature, *see Eateries, Inc. v. J.R. Simplot, Co.*, 346 F.3d 1225, 1229 (10th Cir. 2003), it should not apply where Plaintiff's excluded evidence was needed to counter Defendant's use of false or misleading evidence and Defendant's own violation of the court's categorical exclusion of post-filing evidence. We need not determine whether to adopt such an exception because, even if we did, there is no factual basis in the record to apply it here.[5] Plaintiff asserts the testimony Defendant elicited from its

---

[5] Plaintiff contends the district court recognized that the testimony Defendant solicited was improper. The record on this point, however, is far from clear. The

employees was false, but the record evidence, although subject to dispute, supports their testimony. Plaintiff also asserts the testimony violated the court's bar on post-filing evidence,[6] but the testimony related solely to the pre-filing amounts Defendant had issued. Rather than introducing false evidence of post-filing events, it appears Defendant simply played by the rules Plaintiff asked for by introducing evidence of pre-filing payments. In sum, Plaintiff invited the court to exclude certain kinds of evidence when it seemed favorable to his case, and now he charges the court with error for enforcing the exclusion when it seemed unfavorable to his case. This is precisely the type of scenario in which the invited-error doctrine precludes appellate review.

*Third*, Plaintiff argues that the district court abused its discretion by admitting into evidence photographs of his home. At trial, Defendant attempted three times, with three witnesses, to introduce recent photographs of Plaintiff's home that

---

court appears to have concluded that detailed testimony regarding the pre-filing amounts Defendant issued to Plaintiff was becoming overly confusing for the jury. The court thus precluded Defendant from further arguing or eliciting testimony regarding pre-filing amounts. The court initially seems to have agreed with Plaintiff's suggestion to also issue a limiting instruction with respect to the testimony about pre-suit payments on the ground that the testimony was irrelevant, but it ultimately declined to do so. Although the district court's reasons for the restrictions it placed (or chose not to place) on Defendant's presentation of its case are not entirely clear, the upshot is that nothing in the record indicates the court thought the testimony Defendant elicited was false, misleading, or a violation of its prior ruling excluding post-filing evidence. Thus, the court's handling of the testimony does not provide a factual underpinning for Plaintiff's request that we adopt an equitable exception to the invited-error doctrine in his case.

[6] Notably, Plaintiff never objected to the testimony on this basis.

12

Defendant had produced after discovery had ended.  Plaintiff twice objected that the photographs were not timely disclosed, and the court twice sustained the objection.

Defendant's third attempt to introduce the photographs occurred while cross-examining Plaintiff.  Plaintiff's counsel had contended in his opening argument, and had elicited testimony from Plaintiff, that Plaintiff placed a premium on his home having a uniform look.  Unlike the two previous occasions, Defendant offered the photographs as contradictory evidence on this point in order to impeach Plaintiff.  Plaintiff's counsel complained that these were "the same photo[graph]s that were taken last weekend" that were previously excluded (Appellant's App. at 3320), but the court noted this was a different witness and told counsel that, if he had an objection, it was overruled.

On appeal, Plaintiff primarily argues the photographs should have been excluded because they were not disclosed during discovery.  If a party fails to timely disclose certain evidence as required by Fed. R. Civ. P. 26(a), "the party is not allowed to use that [evidence] . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 26(a), in turn, requires a party to identify during the discovery period certain "evidence that it may present at trial *other than solely for impeachment*."  Fed. R. Civ. P. 26(a)(3)(A)(iii) (emphasis added).  "In other words, a party need not disclose [this evidence] pursuant to Rule 26(a) if the evidence will be used solely for impeachment."  *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1281 (D.C. Cir. 2015) (internal quotation marks omitted);

13

*accord Parson v. Farley*, ___ F. App'x ___, No. 18-5125, 2020 WL 132439, at *7 (10th Cir. Jan. 13, 2020).

Both sides agree the photographs were not timely disclosed but could be used at trial if they were used solely for impeachment.[7] They disagree on whether the photographs were, in fact, used solely for impeachment. Our case law distinguishing evidence used solely for impeachment from substantive evidence in this context is not very developed. Other circuits vary regarding the extent to which evidence may have substantive, rather than just impeachment, value and still fit within Rule 26(a)'s solely-for-impeachment exception. *See generally Standley*, 783 F.3d at 1281–84. We have not directly addressed the issue, but we have suggested that the evidence should have no substantive value. *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001) ("If, as the judge saw it, the evidence was really more than mere impeachment evidence, then the witnesses should have been disclosed."). "We generally defer to the district court's decision" regarding whether "evidence is offered for reasons other than impeachment." *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 91 F. App'x 37, 45 (10th Cir. 2004) (citing *Searles*, 251 F.3d at 877).

Here, the record demonstrates that the district court permitted the photographs on the ground that they would be used to impeach Plaintiff by contradicting his testimony concerning the importance of a uniform look to his house. Further,

---

[7] Because we conclude the district court did not abuse its discretion in permitting the photographs to be used for impeachment, we decline to address the parties' arguments concerning whether Defendant's failure to timely disclose the photographs was harmless or substantially justified. *See* Fed. R. Civ. P. 37(c)(1).

14

defense counsel's subsequent examination appears to have been aimed at showing that, in the years following the hailstorm, Plaintiff did not maintain his house with a uniform look. Plaintiff asserts the photographs were used not to impeach but to show it was reasonable to use Defendant's choice of brick on a house that lacked a uniform look, but this substantive use is not apparent in the record. Thus, we see no reason that the court's decision should not merit our deference.

Plaintiff also argues that the photographs should have been excluded as irrelevant and unfairly prejudicial.[8] We review evidentiary rulings of this nature for abuse of discretion. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1255–56 (10th Cir. 2010). Plaintiff contends that the photographs are irrelevant because they do not depict his home as it looked at the time it was damaged by the hailstorm and thus are unrelated to the reasonableness of Defendant's conduct. He also contends that the photographs were unfairly prejudicial because Defendant used them to show he did not care for the appearance of his home, which directly undercut his theory of the case. We are not persuaded. The photographs were relevant to Plaintiff's credibility on the issue of the importance of a uniform look, *see Burke v. Regalado*, 935 F.3d 960, 1024 (10th Cir. 2019) (explaining that evidence used to impeach by contradiction is relevant if the jury can infer from it that the witness's testimony is

---

[8] Plaintiff may have waived this argument by failing to object to the photographs on these bases in the district court and then failing to argue for plain-error review on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011). However, because Defendant does not raise the issue of waiver and because there is at least some question as to whether Plaintiff had a meaningful opportunity to raise the argument at trial, *see infra* note 9, we proceed to the merits.

false); *Creekmore v. Crossno*, 259 F.2d 697, 698 (10th Cir. 1958) ("The credibility of the witness is always relevant in the search for truth." (internal quotation marks omitted)), and we fail to see how using them to contradict Plaintiff's testimony that he valued a uniform look prejudiced him in an unfair way, *see United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." (internal quotation marks omitted)).[9]

## II.    Jury Instruction

Plaintiff lastly argues that the district court erred by instructing the jury regarding the statutory recovery that a successful § 10-3-1115 plaintiff may obtain. Under the statute, plaintiffs are entitled to "recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1). At the charging conference, Defendant proposed an instruction that, "[u]nder Colorado law, an insurance company that unreasonably delays or denies payment of a covered benefit is subject to certain statutory penalties to be imposed by the Court." (Appellant's App. at 2477.) Plaintiff objected on the grounds that other courts had

---

[9] Plaintiff also contends the district court acted arbitrarily by overruling his objections to the photographs before even hearing them. There is some sparse authority—although Plaintiff fails to cite any—for the notion that preemptively overruling an objection might be reversible error in some circumstances. *See United States v. Llerenas*, 743 F. App'x 86, 90 (9th Cir. 2018). However, any error in this regard was harmless, as we have already determined that the photographs were neither irrelevant nor unfairly prejudicial and that the court thus did not abuse its discretion in admitting them. *See id.* (concluding error from peremptorily overruling objection to testimony was harmless).

16

rejected the instruction, the "penalty" is not in the jury's province, and the instruction is prejudicial. The court overruled the objection and issued the instruction.

On appeal, there is no real dispute that the instruction accurately states Colorado law.[10] Instead, the dispute centers on the district court's decision to give the instruction, an issue governed by federal law.[11] "We review de novo whether, as a whole, the district court's jury instructions . . . provided the jury with an ample understanding of the issues and applicable standards." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 992 (10th Cir. 2019) (internal quotation marks omitted). Under this standard, "[w]e review a district court's decision to give a particular jury instruction for abuse of discretion." *Harte v. Bd. of Comm'rs*, 940 F.3d 498, 525 (10th Cir. 2019) (internal quotation marks omitted). "We do not decide whether the instructions are flawless, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues." *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1155 (10th Cir. 2012) (internal quotation

---

[10] In a two-sentence footnote in his reply brief, Plaintiff argued for the first time in this litigation that the instruction misstates Colorado law by referring to the recovery provision as a "penalty." He then repeated this point at oral argument. We do not review this argument because (1) Plaintiff did not raise it in the district court and does not argue for plain-error review on appeal, *see Richison*, 634 F.3d at 1130–31; (2) he first raised it in his reply brief when he could have raised it in his opening brief, *see Burke*, 935 F.3d at 1018 n.44; and (3) he did not adequately brief it, *see Therrien*, 617 F.3d at 1252–53.

[11] Both parties cite Colorado authorities to support their views on whether the instruction should have been given. We have repeatedly held, however, that, in "a diversity case, the content of jury instructions is a matter of state substantive law but the determination of whether an instruction was erroneously given is governed by federal procedural law." *Pratt v. Petelin*, 733 F.3d 1006, 1008 n.1 (10th Cir. 2013).

17

marks and brackets omitted). "If we determine that the trial court erred, we must then determine whether the error was prejudicial . . . ." *Id.* "Faulty jury instructions require reversal when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1198 (10th Cir. 2012) (internal quotation marks omitted).

Generally speaking, the federal courts have recognized a policy against informing juries of statutory fee-and-cost-shifting or damages-multiplying provisions on the ground that juries so informed might decrease the damages award or find no liability based not on the evidence but on whether the defendant deserves to be penalized and the plaintiff so rewarded, which would thwart the legislative purposes of the statute. *See generally Brooks v. Cook*, 938 F.2d 1048, 1051–53 (9th Cir. 1991). And, we have held that a trial court errs by informing the jury of such provisions under the antitrust statute because the jury may respond by adjusting its damages award downward to offset trebling and shifting. *See Standard Indus., Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 222–24 (10th Cir. 1973); *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1370 (10th Cir. 1972). Although we have never applied this policy in the context of a § 10-3-1115 claim, Plaintiff points to district court decisions refusing to instruct juries regarding the statute's recovery provision for some of the reasons animating the policy.[12] Ultimately, we do not decide in this

---

[12] *See Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-00982-LTB-KLM, 2018 WL 3496735, at *5–6 (D. Colo. July 20, 2018); *Casaretto v. GEICO Cas. Co.*,

18

appeal whether the district court erred by giving the instruction because, even assuming it erred, we conclude the error was not prejudicial, and we are not left with substantial doubt that the instructions as a whole properly guided the jury.

Plaintiff has not shown that the challenged instruction prejudiced him. An instructional error is harmless unless the verdict was tainted by the error. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1252–53 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).[13] In our cases, the potential prejudice from this type of instruction that we have been primarily concerned with is the risk that juries will reduce the damages award to counterbalance the recovery provision. Where the jury does not determine the amount of damages to be awarded, however, the risk of prejudice from informing them of the provision is greatly reduced, and, in such circumstances, we have suggested that an instruction informing the jury of the provision is harmless. *See Semke*, 456 F.2d at 1370 (explaining that, "since there

No. 16-cv-00285-MEH, 2017 WL 7693513, at *2 (D. Colo. May 26, 2017); *Seidman v. Am. Family Mut. Ins. Co.*, No. 14-cv-3193-WJM-KMT, 2016 WL 8201768, at *3 (D. Colo. Sept. 13, 2016); *Toy v. Am. Family Mut. Ins. Co.*, No. 12-cv-01683-PAB-MJW, 2014 WL 486173, at *1 (D. Colo. Feb. 6, 2014).

[13] There is a recognized tension in our precedent regarding the standard to apply when assessing prejudice from an erroneous instruction. *See Koch v. Koch, Indus., Inc.*, 203 F.3d 1202, 1233 (10th Cir. 2000). Some of our cases have stated that reversal is warranted if there is any possibility, even a very unlikely one, that the jury might have based its verdict on the erroneous instruction, while other cases state that reversal is only required if the verdict more probably than not was tainted by the error. *See id.* Although both parties have relied on the latter standard, we do not decide between them because we would reach the same decision under either standard. *See Hardman v. AutoZone, Inc.*, 214 F. App'x 758, 765 (10th Cir. 2007).

existed little room in the evidence under the trial court's instruction to award *any* damages," "we would consider the error harmless").[14]  Even where the jury does determine the damages amount, we have said that the instructional error is harmless when the court "simply inform[s the jury] that the other matters, i.e., trebling, costs, and attorney's fees[,] [a]re questions for the court."  *Standard Indus.*, 475 F.2d at 223–24 (internal quotation marks omitted).  Here, the jury was not tasked with determining the amount of the covered benefit, and it ultimately returned a verdict absolving Defendant of liability.  Further, the court expressly instructed the jury on which factual determinations it "must" evaluate liability and explained that the recovery provision would be imposed, if at all, "by the Court."  (Appellant's App. at 3512.)  In these circumstances, we do not think the jury's verdict was tainted by the challenged instruction.[15]

---

[14] *See also SuperTurf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1287 n.16 (8th Cir. 1981) ("[E]ven if the instruction was erroneous, [the plaintiff] was not substantially prejudiced by its use in light of the jury verdict absolving [the defendant] of . . . liability."); *Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 862 (9th Cir. 1977) ("Because the jury's determination necessarily meant that [the defendant] had no liability, any error in instructions concerning damages was not prejudicial."); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 852 (5th Cir. 1975) ("[The plaintiff] suffered no prejudice from this error that would require a new trial[ because t]he jury specifically found no violations . . . ."); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2886 (3d ed. 2019) ("Errors in instructions routinely are ignored . . . if the erroneous instruction went to an issue that is immaterial in the light of the jury's verdict . . . .").

[15] The other prejudice that could arise from a recovery-provision instruction is that the jury might base its liability determination—rather than merely its damages award—on the desire to avoid penalizing the defendant or overcompensating the plaintiff.  *See Brooks*, 938 F.2d at 1051–53.  Some federal courts, including our own, appear to have implicitly rejected this theory of prejudice.  *See Semke*, 456 F.2d at

20

Nor are we left with substantial doubt regarding the instructions as a whole. There is no dispute that the remainder of the trial court's instructions accurately instructed the jury on how to determine liability. Although the instructions might not have been "flawless," there is no indication the jury was "misled" about the law or lacked "an understanding of the issues and its duty to decide" them. *Lederman*, 685 F.3d at 1155. Further, the challenged instruction did not instruct the jury to consider the recovery provision in making its liability determination; in fact, the instruction expressly stated that applying the provision was the court's duty. *See Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013) ("We generally presume that juries follow the instructions given to them . . . .").

---

1370; *see also supra* note 14. Plaintiff, however, relies on this theory and points to defense counsel's closing argument that the case "isn't about the bricks anymore. It's about [Plaintiff] wanting statutory penalties." (Appellant's App. at 3503.) We are not persuaded. As we have said, the threat of prejudice from a recovery-provision instruction is greatly reduced where, as here, the jury never determines or is not called upon to determine the base recovery amount. That logic applies equally to Plaintiff's "complaint about defense counsel's jury argument relating to the [recovery] provision." *Sulmeyer*, 515 F.2d at 852. Further, reaching the opposite conclusion would require us to assume that the jury lied when rendering its special verdict and that it ignored the court's clear instructions for reaching its decision, assumptions we are usually loath to indulge in. *See Barrett v. Salt Lake Cty.*, 754 F.3d 864, 868–69 (10th Cir. 2014) (rejecting challenge to jury instruction that "rest[s] on an implicit assumption [that] the jury lied"); *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) ("The jury is presumed to follow its instructions, even when there has been misleading argument." (internal citations omitted)).

\* \* \*

Because we discern no reversible error in the evidentiary rulings or jury instruction Plaintiff challenges, we **AFFIRM** the district court's judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge